Opinion issued June 2, 2005








     





In The
Court of Appeals
For The
First District of Texas




NO. 01–04–00679–CV




LIZA GREENE AND COREY MILLS, Appellants

V.

PATSY YOUNG, Appellee




On Appeal from the 245th District Court
Harris County, Texas
Trial Court Cause No. 2001–14946–A




O P I N I O N

          In this family law case, attorneys, Liza Greene and Corey Mills (“appellants”),
appeal a sanctions order signed by the trial court against them.


 Of the seven issues
presented by appellants, the dispositive issues that we address are whether the trial
court abused its discretion by sanctioning appellants on grounds on which appellants
had no notice and whether the trial court had jurisdiction to sanction appellants under
Texas Rule of Civil Procedure 13 for signing a motion filed in federal bankruptcy
court. 
          We reverse and render.
Factual and Procedural Background
          On November 26, 2001, the trial court signed a final decree of divorce between
Ronald Eugene Repine (“Ronald”) and Elizabeth Ann Pollard-Repine (“Elizabeth”). 
The decree ordered Ronald to make bimonthly child-support payments of $561 to
Elizabeth. When Ronald failed to make these payments, Elizabeth retained attorney,
and appellee in this appeal, Patsy Young (“Young”), who filed a motion for
enforcement by contempt for failure to pay child support against Ronald. 
          On June 26, 2003, the trial court signed an order holding Ronald in contempt
for failure to pay child support and ordered him confined to jail for six months and
then from day to day until he purged himself of contempt. The trial court also
ordered Ronald to pay $22,858.75 in child support arrearage and $2,026.75 in
attorney’s fees to Young.


 
          On July 1, 2003, Ronald filed a voluntary petition in bankruptcy. Attorney
Corey Mills represented Ronald in the bankruptcy proceeding. Mills also represented
Ronald in the family court until early August 2003, when Liza Greene became
Ronald’s family law attorney. Margaret McClure represented Elizabeth in bankruptcy
court and Young continued to represent Elizabeth in family court. 
          During July and August 2003, the parties engaged in negotiations to settle the
child support claims. As part of this process, Young offered to settle if Ronald
deeded his home to Elizabeth and paid Young’s attorney’s fees. Mills responded that
Ronald could not deed his home because it was part of the bankruptcy estate. 
          Elizabeth and Ronald ultimately reached an agreement that was memorialized
in an “Agreed Order Lifting Stay,” which was signed by the bankruptcy court on
September 11, 2003. In making this agreement, Mills acted as Ronald’s counsel and
McClure acted as Elizabeth’s attorney. 
          The Agreed Order Lifting Stay provided that the bankruptcy stay would be
lifted as to Elizabeth. It further provided that Ronald would deed his home to
Elizabeth, and the property would then be sold. The sale proceeds would first pay the
outstanding balance on the mortgage and then any attorney’s fees secured by the deed
of trust. The remaining proceeds would be applied to the child support arrears owed
to Elizabeth and the attorney’s fees owed to Young. The order also provided that the
family court would determine whether Ronald should be released from jail. 
          On September 12, 2003, the family court heard Ronald’s motion to suspend his
incarceration. Although Elizabeth testified that she wanted Ronald released from jail,
Young told the family court that she opposed Ronald’s release. The trial court denied
Ronald’s motion on the basis that the Agreed Order Lifting Stay placed payment of
Ronald’s other debts, including his attorney’s fees, before payment of the child
support arrears. 
          On September 23, 2003, Ronald’s father died. Mills and Greene worked with
Elizabeth and her bankruptcy attorney, McClure, to secure Ronald’s release to attend
the funeral and be with his mother. Young prepared an “Agreed Amended Release
Order,” which provided for Ronald’s release. The order provided, inter alia, that
Ronald would deed his home to Elizabeth, pay the child support arrearage, pay Young
her attorney’s fees, and agree that he would not pursue any action against Young or
Elizabeth for violating the bankruptcy stay. In correspondence sent with the proposed
order of release, Young stated that she would appear in court to present the order on
the condition that she first receive a certified check from Ronald, paying a portion of
her attorney’s fees. Ronald and his attorneys declined Young’s offer and turned to
the bankruptcy court, seeking to secure Ronald’s release from jail.
          Elizabeth, as movant, and Ronald, as debtor, with the assistance of their
counsel McClure, Mills, and Green, filed a “Joint Motion to Enforce Agreed Order
Lifting Stay and Request for Additional Relief” (“Joint Motion”) in the bankruptcy
court. The Joint Motion alluded that the family court had overstepped its bounds in
refusing to release Ronald in light of the parties’ agreement that was reflected in the
earlier order signed by the bankruptcy court, which lifted the stay as to Elizabeth. 
The Joint Motion contended, in relevant part, as follows:
The [family court’s] ruling had been primarily at the request of the
family counsel for [Elizabeth] Patsy Young, who, despite direction from
her client, [Elizabeth], that she wishes [Ronald] to be released, has
continually insisted that her attorney fees MUST be paid in full before
[Ronald] is released from jail. Apparently, Patsy Young believes that,
despite the priority of claims set forth per the Bankruptcy Code, she is
more of a priority than secured creditor Ford Motor Credit or the
children of [Ronald] and [Elizabeth], each of whom have made claims
in this case. Additionally, Ms. Young’s refusal to heed her client’s
requests out of her own self-interest in immediately obtaining her
attorney fees is a conflict of interest and, further, appears highly
unethical. 
 
. . . .
 
. . . The only obstacle to [Ronald’s] release is a family court Judge who
does not understand that [Ronald] has a right to pay his child support
arrears, including attorney fees owed to Patsy Young, via his Chapter 13
Plan. 
          The bankruptcy court conducted a hearing on the Joint Motion on September
24, 2003. In attendance were Elizabeth, McClure, Greene, and Mills. The
bankruptcy court did not rule on the Joint Motion. Instead, based on the information
supplied by the attorneys in the Joint Motion, the bankruptcy court issued an order,
providing that Young was to appear before the bankruptcy court on September 25,
2003, and show cause why she should not be held in contempt for violating the
bankruptcy stay. The bankruptcy court explained, “I want that lawyer [Young], that
creditor, apparent creditor, to show cause why she shouldn’t be held in contempt for
continuing to assert a prepetition debt, which is resulting in harm to the debtor and
therefore harm to the estate and the viability of the bankruptcy case.” 
          Mills attempted to personally serve Young with the order to appear and show
cause, but Young knocked the order from Mills’s hands. Mills, Greene, and McClure
appeared at the show cause hearing on September 25. However, Young did not
appear and the bankruptcy court issued an order for the United States Marshal to
arrest Young. On September 29, 2003, Young, represented by counsel, surrendered
herself at the bankruptcy courtroom. She was then arrested, fingerprinted,
photographed, and returned to the courtroom for the hearing. The bankruptcy court
issued no further orders, but warned Young that she should take no action in pursuing
her attorney’s fees against Ronald that would violate the bankruptcy stay. 
          On October 6, 2003, Young filed a motion in the family court to withdraw as
Elizabeth’s counsel and a “Motion for Rule 13 Sanctions” against Mills, Greene, and
McClure, for signing the Joint Motion filed in bankruptcy court. Young contended
that she could no longer represent Elizabeth because Elizabeth had “taken an
adversarial position” to her. Young claimed that certain representations in the Joint
Motion were inaccurate and that the motion was groundless. Relying on Rule 13,
Young contended that the motion was brought in bad faith and for purposes of
harassment. Young asserted that statements made in the Joint Motion were
defamatory to her and to the family court judge. Young requested sanctions against
Mills, Greene, and McClure based on the alleged Rule 13 violation and based on the
claimed defamatory statements in the Joint Motion. Other than Rule 13 and the
defamatory nature of the statements made in the Joint Motion, no other basis for
sanctions was raised in Young’s motion.
          The family court held a hearing on the motion to withdraw and the motion for
sanctions on October 22 and 23, 2003. Young, McClure, Greene, and Mills each
testified at the hearing. Although offered as exhibits, the transcripts of the
bankruptcy court hearings conducted on September 24, 25, and 29, 2003 were not yet
available at the time of the sanctions hearing. 
          At the end of the hearing, the family court granted Young’s motion to
withdraw. The court told the parties that it would announce a date for ruling on
Young’s Motion for Rule 13 Sanctions after it received the bankruptcy court
transcripts. 
          On March 18, 2004, the family court signed an “Order of Sanctions” and read
it into the record. The family court sanctioned Mills and Greene, but concluded that
it did not have jurisdiction to sanction McClure. In relevant part, the family court
found that numerous statements made by appellants in the Joint Motion and during
the September 24th and 25th bankruptcy court hearings were “false” and that
appellants had misled the bankruptcy court. The court also found that appellants had
“caused” Young to be arrested by the United States Marshal. The family court based
the sanctions against Mills and Green not only on Rule 13, as had been pled by
Young in her motion, but also on its inherent power to sanction and on violations of
Texas Civil Practice and Remedies Code Chapter 10 (“Chapter 10”), the Texas
Disciplinary Rules of Professional Conduct (“Disciplinary Rules”), and the Texas
Lawyers Creed. The family court ordered that Mills and Greene (1) jointly pay
Young $5,000; (2) enroll in eight hours of legal ethics courses; (3) perform 40 hours
of community service; (4) pay $500 to the Texas Center for Ethics and Legal
Professionalism; and (5) write and sign letters of apology to the bankruptcy judge, the
family court judge, and Young. 
          In their motion for new trial, appellants challenged the sanctions order on the
basis that they had not been given notice that the trial court would exercise its
inherent authority to sanction. Appellants also objected that imposing sanctions
based on Chapter 10, the Disciplinary Rules, and the Texas Lawyers Creed was
improper because these grounds were not pled by Young in her motion for sanctions. 
In addition, appellants complained that it was improper for the trial court to base its
Rule 13 sanctions on the Joint Motion—a filing made in bankruptcy court. Following
a hearing, the trial court denied the motion for new trial.
          At the request of appellants, the family court also filed findings of fact and
conclusions of law. The court made clear that the sanctionable conduct was not only
the “false” statements made in the Joint Motion, but also the “false” statements made
by Greene and Mills at the September 24th and 25th bankruptcy court hearings, and
Mills’s and Greene’s conduct that “caused” Young’s arrest and detention by the
federal authorities. The family court reiterated that it had inherent authority to
sanction Mills and Greene. The court indicated that it was relying on the Disciplinary
Rules and the Lawyers Creed as “ethical guideposts.” The family court concluded
that appellants had engaged in conduct that violated Rule 13, Chapter 10, unspecified
provisions of the Disciplinary Rules, and the Lawyers Creed. 
Standard of Review
          We review the trial court’s imposition of sanctions under an abuse of discretion
standard. See Kings Park Apts., Ltd., v. Nat’l Union Fire Ins. Co., 101 S.W.3d 525,
540 (Tex. App.—Houston [1st. Dist.] 2003, pet. denied) (applying abuse-of-discretion standard to review Rule 13 sanction award made pursuant to court’s
inherent power); Gaspard v. Beadle, 36 S.W.3d 229, 239 (Tex. App.—Houston [1st
Dist.] 2001, pet. denied) (reviewing trial court’s award of sanctions under abuse-of-discretion standard); Finlay v. Olive, 77 S.W.3d 520, 524 (Tex. App.—Houston [1st.
Dist.] 2002, no pet.) (determining whether trial court abused its discretion in
awarding sanction under Chapter 10). The test for determining if the trial court
abused its discretion is whether the trial court acted without reference to any guiding
rules or principles. Koslow’s v. Mackie, 796 S.W.2d 700, 704 (Tex. 1990).
Propriety of Sanctions Order 
A.      Notice
          In their second issue, appellants contend that the family court abused its
discretion because the court improperly granted sanctions based on authority other
than Rule 13 and for conduct other than the appellants’ signing and filing of the Joint
Motion. 
          The due process clause of the United States Constitution limits a court’s power
to sanction. In re Bennett, 960 S.W.2d 35, 40 (Tex. 1997) (orig. proceeding). For
this reason, the imposition of sanctions requires that “notice reasonably calculated,
under the circumstances, to apprise interested parties of the pendency of the action
and afford them the opportunity to present their objections.” In re L.A.M. & Assocs.,
975 S.W.2d 80, 83 (Tex. App.—San Antonio 1998, orig. proceeding) (quoting
Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 84, 108 S. Ct. 896, 899 (1988)). The
relevant sources for the sanctions imposed in this case—Rule 13, Chapter 10, and the
court’s inherent power—expressly require that notice be given to the party subject to
the sanctions.


 
          When a party or attorney violates Rule 13, the court shall impose sanctions on
a motion or on the court’s own initiative, “after notice and hearing.” Tex. R. Civ. P.
13. With regard to Chapter 10 sanctions, section 10.003 provides, “The court shall
provide a party who is the subject of a motion for sanctions under Section 10.002
notice of the allegations and a reasonable opportunity to respond to the allegations.” 
Tex. Civ. Prac. & Rem. Code Ann. § 10.003 (Vernon 2002). The traditional due
process protections of notice and hearing are also required before a trial court can
impose sanctions on a party pursuant to its inherent power to sanction. Kutch v. Del
Mar College, 831 S.W.2d 506, 511 (Tex. App.—Corpus Christi 1992, no writ). 
          Young’s Motion for Rule 13 Sanctions expressly requested sanctions “pursuant
to” Rule 13 based on appellants’ signing of the Joint Motion, which Young alleged
contained “defamatory” statements. Young’s motion made no mention of Chapter 10,
the family court’s inherent power to sanction, the Disciplinary Rules, or the Lawyers
Creed, which were cited by the family court as legal bases for the sanctions. Other
than the signing of the Joint Motion, Young’s motion did not request sanctions for
appellants’ conduct at the bankruptcy court hearings; however, the family court’s
order makes clear that it sanctioned appellants for such conduct, particularly
representations made by appellants during the bankruptcy court hearings.
          Because they received notice that sanctions were sought only under Rule 13,
we agree with appellants that the family court improperly relied on Chapter 10, the
Disciplinary Rules, the Lawyers Creed, and its inherent power to impose sanctions. 
Furthermore, the family court improperly sanctioned appellants for their statements
made at the bankruptcy court hearings because appellants had no notice that such
conduct was under consideration for sanctions. 
          In reaching this conclusion, we find two cases to be instructive. The first is 
Ball v. Rao in which the Fort Worth Court of Appeals concluded that the trial court
erred by imposing sanctions pursuant to Texas Civil Practice and Remedies Code
Chapters 9 and 10 and Rule 13, when the sanctions request had only requested
sanctions under Chapter 10 and Rule 13. 48 S.W.3d 332, 338 (Tex. App.—Fort
Worth 2001, pet. denied). Because the parties seeking sanctions had not based their
request on Chapter 9, in addition to Chapter 10 and Rule 13, the appellate court
sustained the appellants’ challenge on this issue. Id.
          Similarly, this Court has reversed a sanctions award when the sanctioned party
did not have notice of the conduct ultimately sanctioned. In Bisby v. Dow Chem. Co.,
Dow sought exemplary damages against Bisby for recording of improper liens, for
her refusal to remove the cloud on Dow’s title, and for returning a letter sent to her
by Dow. 931 S.W.2d 18, 21 (Tex. App.—Houston [1st Dist.] 1996, no writ). Bisby
did not attend trial and the trial court signed a default judgment against her. Id. at 20. 
In its judgment, the trial court imposed sanctions against Bisby based on her “filing
the three pleadings in this case entitled ‘This affidavit is a refusal for Cause Without
Dishonor U.C.C. 3-501 and Notice of Default and Notice of Acquiescence of Lien
Debtors to Validity of Bona Fide Liens.’” Id. at 21. Bisby appealed by writ of error,
challenging the sanctions award based on lack of notice. Id. Dow contended that,
because it had included a provision in its original petition that requested exemplary
damages, Bisby was on notice that sanctions may be levied against her. Id. We
concluded that the trial court erred by assessing sanctions because Dow did not seek
sanctions based on Bisby’s filing of the three pleadings mentioned in the trial court’s
judgment. Id. In reversing the sanctions award, we wrote, 
Bisby was denied the opportunity to have a hearing and present evidence
to demonstrate that her pleadings were not groundless, brought in bad
faith or meant to harass. Because Bisby was not put on notice that
sanctions would be imposed upon her for filing the three
above-described pleadings, the trial court erred in assessing sanctions. 

Id.
          On appeal, Young contends that her motion for sanctions was sufficient to
support the sanctions award on all grounds relied on by the family court in its order. 
Young points out that Texas follows a “fair notice” standard for pleading, which
looks to whether the opposing party can ascertain, from the pleading, the nature and
basic issues of the controversy and what testimony will be relevant. See
Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 896–897 (Tex. 2000). She
also points out that, if no special exceptions are filed, then we must “construe the
pleadings liberally in favor of the pleader.” Id. at 897. However, we have previously
noted that there is no duty to file special exceptions that, in effect, ask a claimant
whether she wants to add other causes of action or legal theories to the one she has
already pled. Bradt v. West, 892 S.W.2d 56, 75 (Tex. App.—Houston [1st Dist.]
1994, writ denied). We explained that the purpose of special exceptions is not to
create a duty to inquire whether a claimant intended by her pleadings to bring every
cause of action that might arguably apply to the facts pled. Id. at 75–76.
          “A petition is sufficient if it gives fair and adequate notice of the facts upon
which the pleader bases his claim. The purpose of this rule is to give the opposing
party information sufficient to enable him to prepare a defense.” Auld, 34 S.W.3d 
at 897 (citing Roark v. Allen, 633 S.W.2d 804, 810 (Tex. 1982)). Here, Young’s
motion expressly requested sanctions “pursuant to” Rule 13 and specifically quoted
provisions of that rule as the basis for the sanctions sought against appellants. The
motion made no request that the family court consider other authority as legal bases
to sanction appellants. Specifically, no mention was made of Chapter 10 or the
court’s inherent power to sanction and no reference was made to the Disciplinary
Rules or the Lawyers Creed.


 
          Factually, Young’s Rule 13 sanctions request arose from appellants’ Joint
Motion in which Young alleged that appellants made “defamatory” statements. 
Young did not allege any additional facts that would alert appellants that they were
subject to sanctions pursuant to any statutory provision, rule, or legal theory other
than Rule 13. To the contrary, Young’s motion asserted that the Joint Motion was
“groundless,” “brought in bad faith,” and “brought for purposes of harassment.” Such
allegations track the express language of Rule 13. Thus, the Motion for Rule 13
Sanctions did not provide appellants with sufficient notice to prepare a defense to
sanctions that might be imposed under Chapter 10 or the family court’s inherent
power to sanction for violations of the Disciplinary Rules, the Lawyers Creed, or any
other rule or standard. See Davila v. World Car Five Star, 75 S.W.3d 537, 542 (Tex.
App.—San Antonio 2002, no pet.) (concluding that request for sanctions based only
on DTPA section 17.50 was not sufficient to provide “fair notice” to party that he was
also subject to sanctions under Chapter 10 and Rule 13). 
          Young also points out that her motion contained a general prayer for relief. 
She cites Burnett v. James for the proposition that the general rule is that a prayer for
general relief will authorize judgment for any relief a trial court has jurisdiction to
grant, so long as the judgment is supported by the allegations and proof and is
consistent with the theory of recovery stated in the pleadings. 564 S.W.2d 407, 409
(Tex. Civ. App.—Dallas 1978, writ dism’d). However, this rule is inapposite to the
issue at hand. The question is not whether appellants had notice of the particular
“relief” that was awarded to Young; rather, it is a question of whether appellants were
afforded notice of the bases for the sanctions imposed against them to enable them
to mount an adequate defense.
          Young further contends that the unpled and unnoticed bases for the sanctions
award were tried by consent because evidence was presented at the sanctions hearing
that went beyond the four corners of the Joint Motion. Young points out that
appellants presented evidence regarding the events leading to the filing of the Joint
Motion and what transpired in bankruptcy court. 
          Trial by consent is intended to cover the exceptional case in which it clearly
appears from the record, as a whole, that the parties tried the unpleaded issue. 
Stephanz v. Laird, 846 S.W.2d 895, 901 (Tex. App.—Houston [1st Dist.] 1993, writ
denied); Mastin v. Mastin, 70 S.W.3d 148, 154 (Tex. App.—San Antonio 2001, no
pet.). It is not intended to establish a general rule of practice and should be applied
with care, and never in a doubtful situation. Stephanz, 846 S.W.2d at 901. Trial by
implied consent “applies only where it appears from the record that the issue was
actually tried, although not pleaded.” Johnston v. McKinney Am., Inc., 9 S.W.3d 271,
281 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (citation omitted). To
determine whether the issue was tried by consent, the court must examine the record
not for evidence of the issue, but rather for evidence of trial of the issue. Stephanz,
846 S.W.2d at 901. When evidence relevant to both a pleaded and an unpleaded issue
has been admitted without objection, the doctrine of trial by consent should not be
applied unless clearly warranted. Johnston, 9 S.W.3d at 281. 
          When determining whether Rule 13 sanctions are warranted, a court may
consider the entire history of the case. Falk & Mayfield v. Molzan, 974 S.W.2d 821,
825 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). Rule 13 permits sanctions
against attorneys who sign pleadings, motions, or other papers that are both
groundless and either brought in bad faith or for the purpose of harassment. Tex. R.
Civ. P. 13. To determine if a pleading was groundless, the court will look to the facts
available to the litigant and the circumstances at the time the suit was filed. Skepnek
v. Mynatt, 8 S.W.3d 377, 382–83 (Tex. App.—El Paso 1999, pet. denied). Thus,
appellants’ admission of evidence regarding the circumstances surrounding the filing
of the Joint Motion is arguably relevant to both the pleaded Rule 13 sanctions and
those sanctions that were based on unpleaded grounds. We conclude that the record
does not support Young’s contention that the unpleaded issues were tried by consent. 
          We also conclude that appellants received proper notice that the family court
was considering sanctions against them under Rule 13 for signing the Joint Motion. 
Appellants did not receive proper notice with regard to any other ground for sanctions
relied on by the family court in imposing sanctions. We hold that the family court
abused its discretion in sanctioning appellants based on Chapter 10 and its inherent
power, including any sanctions imposed for violating the Disciplinary Rules and the
Lawyers Creed. 
          We sustain appellants’ second issue.
B.      Rule 13 Sanctions
          The only legal basis remaining that could support the sanctions against
appellants is Rule 13. As a sub-point of their sixth issue, appellants contend that the
trial court was without jurisdiction to impose Rule 13 sanctions for filing the Joint
Motion in bankruptcy court. Appellants contend that any challenge to the bankruptcy
filing needed to be made in bankruptcy court. We agree. 
          We find the recent case of Mantri v. Bergman to be instructive. 153 S.W.3d
715 (Tex. App.—Dallas 2005, pet. filed). There, Mantri sued an attorney under
Chapter 10 for allegedly frivolous litigation that had been filed in Denton County. 
Id. at 716. In affirming the trial court’s granting of a plea to the jurisdiction, the
Dallas Court of Appeals held that the only court with subject matter jurisdiction over
a sanctions request under Chapter 10 is the court in which the allegedly frivolous
litigation was pending.


 Id. at 718. In this regard, the court wrote, “Because the
allegedly frivolous litigation in this case was never before the Dallas County district
court, that court lacked jurisdiction over any proceeding for sanctions concerning the
allegedly frivolous litigation.” Id. 
          As in Mantri, we conclude that the family court in this case did not have
jurisdiction to impose Rule 13 sanctions concerning the Joint Motion filed in
bankruptcy court.


 Any motion for sanctions seeking to have a filing in a federal
bankruptcy court declared groundless, harassing, frivolous, or similarly so, should be
brought in the bankruptcy court, not a state family court. Indeed, Young was not
without a remedy in bankruptcy court. Like Rule 13, Federal Rule of Civil Procedure
11 and Bankruptcy Rule 9011 direct the court to impose appropriate sanctions if,
inter alia, a signed motion or pleading is brought for purposes of harassment,
contains allegations or factual contentions that have no evidentiary support, or
requests relief that is not supported by the law or a good faith argument to extend or
reverse existing law.


 Fed. R. Civ. P. 11; Fed. R. Bankr. P. 9011. 
          Because it was without jurisdiction to impose Rule 13 sanctions related to the
signing of the Joint Motion filed in bankruptcy court, we hold that the family court
abused its discretion by imposing sanctions against appellants based on Rule 13.


 We
sustain appellants’ sixth issue to that extent.


 
Conclusion
          We reverse the family court’s “Order of Sanctions” and render judgment that
Young take nothing with regard to her claim for sanctions against Greene and Mills.




                                                                        Laura Carter Higley
                                                                        Justice

Panel consists of Justices Taft, Alcala, and Higley.